We'll hear the first case, Metropolitan Life Insurance Company. Good morning, Your Honors. Christopher Koss on behalf of Mr. Busick. My client's position is that the lower court made three fundamental errors, each of which by itself requires reversal of the preliminary injunction. I would start with the standard of review. It's set forth at page 8 of our initial brief. Can I just ask you something before you start? This may be a question more appropriately asked to your adversary, but I would think you probably know the answer as well. Is there a document that corresponds to your client's Form U-4 that is undertaken or signed by MetLife committing it to arbitrate, or is it committed to arbitrate simply by virtue of the Rule 13-200 and 13-100? It's certainly committed to arbitrate under the rule. I believe that it would co-sign the U-4. I know that the U-4 . . . It's the U-4. You read the U-4. The U-4 on its face commits your client to arbitrate. It doesn't on its face commit the employer to arbitrate. I think the law has been long held that a U-4 commits both the firm and the registered representative, in this case Mr. Busick, to arbitrate a dispute. There's legion of case law that if in fact there is a U-4 between a firm and an individual, as there is in this case, that it constitutes an arbitration agreement that would be binding upon both parties. The issue here is that the lower court took the position that the U-4 had expired, that it was no longer an arbitration agreement. That's the first of the errors. The arbitration agreement, the U-4, never expired. MetLife's membership in the NASD may have expired, but not the U-4. In fact, if you look at MetLife's brief . . . anything that happens now is still arbitrable. New events, even now, years later, and in the year 2025, MetLife will be bound to arbitrate under the U-4 that applied . . . under the rules that applied long . . . when it was a member, but it long ceased to be. Is that with my client in particular, or under the U-4 that was signed? Well, okay. With your client? Yeah. Taking that question first, the answer is twofold. First of all, with respect to Mr. Busick, in fact, MetLife did agree to arbitrate any and all disputes that arose between the two of them, and it doesn't have any limitation in that U-4 as to when that dispute arises. That was the arbitration agreement that was rendered or reached between the two of them. But on top of that, there has been a second standard to address the issue that Your Honor just raised, which MetLife has proposed, and that is MetLife has asked that the court look at whether material events that gave rise to the statement of claim arose while MetLife was still a member. And we have set forth in both our initial brief and our reply brief a whole litany of material events that occurred during the time that MetLife was, in fact, a member. And so even if one were to adopt MetLife's view that the arbitration agreement should only apply if material events giving rise to the dispute . . . What were some of those? We have stated that Mr., it's clear on the face that Mr. Busick was underpaid for the entirety of his employment, that's stated right there in the statement of claim. That he was defrauded by virtue of his low compensation. Again, during the entire time that he was at MetLife. In fact, in the statement of claim, we cite the profits that Mr. Busick generated for the company, and the fact that when you look at those profits, he was underpaid, and the profits that we cite are for the entirety of the relationship that Mr. Busick had with MetLife, which would include a number of years whereby or was, in fact, a member of FINRA. And so there are material events that touch upon the dispute here. That arose while Mr. Busick was still with MetLife, and MetLife was still a member. On the, as I understand it, it's your position that MetLife breached the wage payment law of New Jersey, because to, and I'm quoting to you, to Mr. Busick's knowledge, the company never provided him with a compensation manual detailing his rate of pay, and more significantly, how his pay would be calculated. I'm trying to understand that view, because Mr. Busick was a, obviously, sophisticated person involved in business. And it seems hard to imagine that if he was so, I know this gets to the merits, which we're not supposed to get to. But it seems, it's hard to imagine that he would not have at least tried to get some sort of understanding about his pay. Given that he was there for a number of years, and it sort of leaves one with the feeling that this is almost thrown in as a way of getting to possible claims before there was the withdrawal by MetLife. First of all, no offense to my client, but he's not as sophisticated as one would think. He did, in fact, try to get information on his compensation. But that is just one of the many claims. If you look at every claim that we have asserted, it in fact touches upon or arises out of, and I see that my initial seven minutes is up. Go ahead. If you look at the entirety of the allegations that we've set forth, they span the entire relationship that he had with MetLife. And a point that I haven't really hit, which I really do want to hit, which is imperative to hit, is that there is an arbitration agreement here. Whether or not the claims fall within it is another issue. But there is an arbitration agreement. And when there is an arbitration agreement, and MetLife admits that under a certain scenario, in fact, you could have claims that are subject to arbitration. Under Alliance Bernstein, that is an issue for the arbitration panel to make a determination on as to whether the claims fit within the arbitration agreement. And I would also note the case of Ginesco, this court's case in Ginesco. If in fact, matters or allegations in the statement of claim touch upon the arbitration agreement, then that matter becomes arbitrable. And clearly, the allegations, many of which are pre-2007, before MetLife terminated its relationship, touch upon that arbitration agreement. MetLife- Did your statement of claim include a specification that we are owed so much money for X year and Y year and Z year, being years prior to MetLife's withdrawal from NASDAQ? We did not, because we didn't have that information. That's what we need to have in discovery. And the pleading requirements in FINRA are very, they're really not stringent pleading requirements. Mr. Busick had some information for later years, like 2011, but he didn't have the information for 2002 to 2007. That's what- Did it say, did the statement of claim say that we are owed compensation for years 2002 to 2007? It states that he was underpaid for the entirety of his employment, and that he seeks compensation accordingly. He says that just based on a feeling, is that what you're saying? Not just based on a feeling, based on knowing what occurred in certain later years, and the fact that he was never given information in regards to what his compensation was in prior years. And discovery may or may not bear it out. But right now, he hasn't even had the chance to have discovery. And the issue is whether or not this claim is one that should be heard by an arbitration panel, and whether the arbitration panel, in the first instance, should make the decision as to whether or not it's arbitrable. And under the Alliance Bernstein case, the answer there is clearly yes. And even if you apply this material standards, or material event standard, when you look at the statement of claim and the litany of allegations that we have alleged, many of them touch upon that time period 2002 to 2007. Let's for the just arguendo assume that MetLife's withdrawal from NNASD ended the party's arbitration agreement, just for the, you know, hypothetically. How can claims arising after that termination be subject to arbitration? That would be, well, that would be the third argument that we've made in our brief. And that is that the withdrawal of MetLife did not, in fact, terminate the agreement. Because the FINRA rules encompass former members, such as FINRA. And the U4 that was signed included all disputes under the FINRA code as may be amended from time to time. And so, as a former member, MetLife is bound to arbitrate under its U4 commitment. But even if one were not to accept that argument, it's our contention that material events, set forth in the statement of claim, did in fact occur in the 2002 to 2007 timeframe. And therefore, even under the standard advocated by MetLife, this case is subject to arbitration. So it's my understanding that the district court's ruling was motivated by the perception that this dispute related to events that occurred after MetLife's withdrawal from NASDAQ. Is that correct? Yes. It was motived. So did the court advert in any way to the aspect of the arbitration demand that you filed, which you say seeks compensation for pre-withdrawal time? Did the court advert to that? The court's ruling was based on that and one other issue. In regards to that issue, the court, as far as we're concerned, simply ignored the other provisions or allegations in the statement of claim, which make it clear that there were material events that arose pre-2007. The court stated that it appears, didn't even take a definitive position, it appears that the allegations are from 2007 on. But the court did not even address the language that we've cited in our initial brief, to your honors, at pages 18 through 22 of our initial brief, where we laid out the many allegations in the statement of claim, which in fact both arise out of that pre-2007 time frame and certainly touch upon that and therefore would require arbitration. The other linchpin of the lower court's decision was that there was no arbitration agreement. And our position is, no, there is an arbitration agreement. The issue is whether or not it applies to this dispute. And when there is an arbitration agreement under the Alliance Bernstein case, as we've set forth in our brief, based on the language of the Fenner Code of Arbitration, which gives the arbitrators broad discussion to interpret the rules, whether or not a particular dispute is subject to that arbitration agreement is one for the arbitration panel to make, not the court. And the court here just circumvented that by taking a position . . . . . . You're interpreting the district judge's opinion to mean that even if it had been clear on its face, even if the claim had related solely and clearly and solely to undercompensation during the time of MetLife's membership in NASDAQ, the district court's reasoning was to the effect that because it has since withdrawn from membership in FINRA, there's no arbitration agreement. No. No. Under those circumstances, if the court had concurred with us that the material events arose, and material events arose prior to MetLife's membership being terminated, the lower court, I believe, would have compelled arbitration. The lower court merely said . . . You're saying that there was no arbitration agreement because the events occurred after the withdrawal. That's what the court said. Yeah. And the court was mistaken in that regard as well, because just because the events occurred afterwards doesn't mean there's no arbitration agreement. It just means, it may mean that the dispute may not be subject to arbitration. But there's always been an arbitration agreement. There continues to be one to this day. And under those circumstances, whether or not a particular dispute falls within it is a question for the arbitration panel under the Second Circuit's decision in Alliance Bernstein, because of that language that we quoted in connection with that case from the FINRA Code of Arbitration, which gives arbitrators very broad discretion. So you're saying that on page 18 to 20, can you just point me to what is the name of your brief, the language from your arbitration demand, which makes clear that you're talking about pre-2007, pre-withdrawal . . . Yeah. It actually starts on page 18. The first full paragraph, it says, by way of example, the statement of claim plainly states, quote, for many years, Mr. Busick has supervised one of the most successful and profitable agencies, not only in his region, but in the entire MetLife system. Nevertheless, during this entire time, MetLife, without any objective or rational basis, has failed to compensate Mr. Busick accordingly. The entire time would include that period 2002 to 2007, when . . . What else? I'm just asking you to point to your quotations from the arbitration demand, which you say . . .  . . . makes it clear that it relates to pre-2007, pre-withdrawal under compensation. What else? We then say that . . . Just tell me where it is on the page. Okay. On the next page, I mean, right below it, the factual background states that Mr. Busick's statement of claim alleges that MetLife has been discriminately underpaying him for years. Yeah. Go ahead. If you look at page 19, and I'm not . . . this whole section deals with it, but I'm just going to focus on some of the highlights. If you look in the first full paragraph, where it starts in his breach of contract claim, Mr. Busick also alleges, quote, MetLife's failure and refusal to compensate Mr. Busick, similar to his peers, is a blatant breach of the MetLife cannot possibly reconcile the compensation it has paid Mr. Busick with the revenues he has generated over the years and the approximately $100 million or more in profits Mr. Busick has earned the company. That $100 million in profits is not something . . . Just . . . I'm asking you for just quotations. Oh, okay. Okay. I just wanted to . . . I understand what you want. Yeah. I understand. I was asking you for a quotation from the arbitration demand. Yeah. Okay. We state on page 20, by way of further example, that Mr. . . . Where on the page? The first full paragraph. Yeah. That MetLife violated New Jersey's wage payment law, and MetLife, quote, never provided him with a compensation manual detailing his rate of pay and, more significantly, how his pay would be calculated. Okay. We then go on to say, on page 20, the statement of claim proceeds to allege that, quote, on an annual basis up until 2016, Mr. Busick received a certain incentive compensation, but the base and compensation figures provided by MetLife were arrived at willy-nilly and bear no reasonable correlation to the revenues and or profitability of his agency. Thank you. Thank you. Thank you, Your Honors. You'll have three minutes in rebuttal. Okay. Thank you. Good morning, Your Honors. Ken Turnbull for Metropolitan Life Insurance Company. Let me start out by addressing Judge LaValle, one of your first questions, which is, where is the obligation to arbitrate? Where does it come from in this case? It comes from two places. Number one, Your Honor correctly noted that Mr. Busick's obligation and agreement to arbitrate is contained in his Form U-4 registration that registers him to be a member of the NASD, and in registering to be licensed, he agrees to arbitrate at the NASD. The second obligation as it relates to MetLife is an obligation that arises by virtue of the firm's membership as an NASD member. As an NASD member, MetLife was obligated to arbitrate. Here . . . That obligation is the obligation set forth in Rule 13-200? Correct. It is not in the Form U-4. However, here, both the membership of MetLife, and therefore its obligation to arbitrate, ended in 2007, and at the same time, the Form U-4 terminated in 2007, and thus, Mr. Busick's agreement to arbitrate. Those are undisputed facts. Indeed, while my esteemed counsel . . . I'm not sure. What's your basis for saying that the Form U-4 . . . Busick's Form U-4, you say, terminated when MetLife withdrew from NASDAQ? Correct. What's the basis for that? Mr. Busick's Form U-4 is a registration form with MetLife Insurance Company. When MetLife's membership ended, that Form U-4 registration ended, and that is set forth in the record, and admitted by Mr. Busick, that . . . So you're saying that if MetLife withdrew on a certain date from NASDAQ membership, and, let's say, things in its business substantially changed at that time, and promptly after that, and employees such as Busick sued or brought arbitration claims . . . Let's say they were all fired when MetLife terminated, because MetLife terminated its business, let's say, when it withdrew, and the employees brought arbitration claims after the withdrawal, the week after the withdrawal, saying, we're owed a lot of compensation for the years that we spent working there. We haven't been paid. You're saying that there's no arbitration agreement that would require MetLife to arbitrate those? That doesn't seem like a very persuasive argument to me. Well, Your Honor, that is where the material event standard comes in. So the arbitration agreement has ended . . . You said, when it withdrew, the U-4 terminated . . . Correct. There was no further arbitration agreement. Correct. So, there's no further arbitration agreement, but if the material events of the dispute between MetLife and its employees occurred while there was an arbitration agreement, then the arbitration agreement covers that dispute. Well, but I mean, there can only be an obligation to arbitrate if there is an arbitration agreement, and you just told me the arbitration agreement no longer exists when MetLife withdraws from . . . the U-4, you say, terminates, and the obligation to arbitrate terminates, so I don't think you're saying two consistent things. I apologize, Your Honor. Let me try to be a little clearer. You're saying that the obligation to arbitrate persists with respect to disputes that relate to the time of the employment, but not with respect to subsequent . . . Correct. So, if the . . . Okay, but now, so Mr. Busick argued to us, he says that his arbitration claim made clear on its face that it related to the entire time of his employment. He says that his arbitration demand was reasonably construed to demand compensation for his work and his generation of profits from the beginning of his employment for the first five years, as well as the subsequent time, so that seems to be consistent with your acknowledgment that if the dispute relates to the time when MetLife was a member of NASDAQ, then there is an arbitration agreement that covers it. Mr. Busick does allege that, just as he alleged at the district court, that the material events giving rise to his claim relate to the period of time between 2002 and 2007, when the arbitration agreement ended, although he filed his claim nine years later, the district court reviewed the facts, reviewed the statement of claim, and determined that that allegation about when the material events arose was incorrect. The court pointed . . . The court, Your Honor, asked whether the court actually looked at the claim and did the district court assess that, and the district court did, and it looked at allegations in the statement of claim. For example, Mr. Busick said from 2011 to 2015, he supervised one of the highest grossing offices, but his compensation was frozen. That's at Appendix 1819. In early 2016, Mr. Busick inadvertently received documentation showing that he was compensated lower than his peers. The district court went through the statement of claim. It considered the argument Mr. Busick's putting forward, and it rejected those. I put it to you that that determination by the district court is reviewed on an abuse of discretion. . . You're saying the district court looked at the more specific allegations, and in view of the fact that the specific allegations related to post-withdrawal, the district court rejected the vaguely general statements that this relates to my entire time of employment. Correct. The district court looked at the specific allegations and said, based upon the statement of claim filed by Mr. Busick, his claims arise 2011 and later, and indeed . . . Your adversary's argument, I think, is that he doesn't know enough to be more specific about the period between 2002 to 2007, but that he has sufficiently alleged that there is, from his point of view, a problem. Right. The district court understood him to be arguing that, and said, you have not sufficiently alleged that. You can, through discovery, come back to me if you want. This is a preliminary injunction. You can come back to me, but looking at the statement of claim, it is clear that the material might note, it is one of the interesting things that the court considered is . . . Your Honor mentioned the New Jersey claim. There's a six-year statute of limitations on a New Jersey wage payment claim. You can't go back to 2007 and before and say the material events giving rise to that occurred before your arbitration agreement ended, because that ended in 2007, and the claim wasn't filed until 2016. If you're conceding that at some point in time, an arbitration agreement between MetLife and Busick was formed, and your position is that that arbitration agreement expired or was terminated, given the language in the U-4, who is it that gets to decide this issue of expiration or termination, the district court or the arbitrator? Yes, Your Honor, thank you. There was an arbitration agreement. There is no longer an arbitration agreement. The issue of who decides whether there is an arbitration agreement is clearly one for the court in the first instance. The Supreme Court has issued numerous decisions, the Howsam decision, the Granite Rock decision in 2010, which there the issue was analogous. The issue there was whether the dispute arose before the agreement was entered. Here the issue is whether the issue arose after the agreement terminated, and the Supreme Court directed that a court must resolve any issue that calls into question the applicability of an agreement to arbitrate. Are you relying substantially on statutes of limitations, saying that even to the extent that one might read his complaint, the vague portions of it, as alleging entitlement to more compensation for the years of 2007 and before, those are so clearly barred by the statute of limitations that the demand must be construed to relate only to non-precluded, time precluded disputes? Your Honor, we are not relying exclusively on the statute of limitations. We are relying on the district court's determination, which we submit was not only correct, but certainly far from an abuse of discretion, that in its entirety, the claim clearly raises issues from 2011 forward. I think the fact that the statute of limitations would bar any claims before 2009 helps inform the question of when the material events giving rise to this dispute arise, but we don't rely solely on the statute of limitations. I should also point out that my adversary to Your Honor's question pointed out that the Alliance Bernstein decision says this is an issue for the arbitrators to decide, but that misreads Alliance Bernstein. In Alliance Bernstein, the court first determined, is there an agreement to arbitrate? The court determined yes, there was, and then sent the underlying question to the arbitrator to decide. Have you encountered the case of Fleck v. E.F. Hutton? It does not sound familiar. That's a case where this court partially overturned Coudere and held that a tort claim arising after the termination of the party's arbitration agreement had to be arbitrated because the resolution of the claim depended on evaluating the plaintiff's performance during employment. Does that ring a bell? I am not familiar with the case, Your Honor. It sounds like, but I have not read it, that it may be an extension or an application of the material events standard that has been applied. If the material events occurred when there was an agreement, then the dispute could be arbitrable. But here, this issue was already considered and decided by another district court Your Honor, Judge LaValle, the district court in Metlife v. Puzo said, quote, We cannot imagine that any FINRA member would have contemplated that its membership would perpetually subject it to FINRA's arbitration requirement, even for causes of action arising long after its membership has ended. So, you said a minute ago that he can go back to the district court with discovery, so is it your contemplation that he can then bring suit before the district court and get discovery, and if he finds substantiation that enables him to be more precise about pre-withdrawal under compensation, he can then point to that to the district court as justification for getting the district court to allow him to go back to arbitration? What I'm saying, Your Honor, is that Judge Engelmeyer, when he issued his ruling, asked the parties whether they thought additional proceedings before the district court were necessary, or did his ruling on the preliminary injunction issue essentially dispose of the issue in total? Mr. Busick said, no, it does not dispose of the issue, and we are entitled to discovery here in the district court on the issue as to whether this claim should be arbitrated. So, if he then brings a counterclaim to Metlife's claim seeking compensation, and he gets discovery, and his discovery, in his view, shows entitlement to additional compensation for pre-withdrawal, he can then go back to arbitration with that? No, if he can convince the district court that, number one, he can either convince the court that there is an agreement to arbitrate. The court said . . . No doubt that there was an agreement. There was, but there is not. You acknowledged . . . Agreed. . . . that if he sought to arbitrate after termination, a dispute that arose before termination, the facts of which arose before termination, you can cover that. Right. If the material events arose while there was an arbitration agreement . . . That's what I'm asking you. If the discovery that he gets in the district court shows that he does have a dispute relating to undercompensation pre-withdrawal, he can still arbitrate that? Yeah. If he can show that the material events arose pre-withdrawal, pre-termination of the agreement, he can argue that it's arbitrable. Thank you. Do you have three minutes? Okay. Thank you. I'll be very, very brief. I would just reiterate that, in my client's view, in the first instance, the decision here as to whether it's arbitrable should, in fact, be made by the arbitration panel, because I think based on the argument today, as well as statements made by MetLife in its briefs, there is an agreement to arbitrate. There is a set of circumstances whereby even MetLife admits the dispute would be subject to arbitration. You can't have that scenario without an agreement to arbitrate. That was the only basis upon which the lower court did not follow Alliance Bernstein and allow the arbitration panel to make the determination as to arbitrability. The only basis that the lower court relied upon in distinguishing Alliance Bernstein was that the arbitration agreement had expired. That was clear legal error. The agreement has not expired. I would also note . . . What about the scenario that Judge LaValle laid out, where discovery is allowed, more discovery is allowed, and you're more specific as to the period between 2002 and 2007, and then you could renew your request for arbitration? I appreciate it. What I'm saying to the court, and my view would be is that I don't think it's even necessary to go there. That certainly would button it up and make it absolutely clear, but I think just on the record right now, the admission that there was an arbitration agreement, therefore it makes the decision as to whether or not this claim is arbitrable, one for the arbitration panel, and I would note that the judge did not look at any of the allegations. If you look at the judge's opinion, he doesn't mention any of our allegations from 2002 to 2007. He doesn't engage in analysis and say, well, the specific overrode the general. He pretended, or at least based on the order, there's no mention of them at all. In terms . . . No, I understand, but in FINRA . . . and I've been . . . in the FINRA cases, the allegations are permitted to be vague as long as they give some indication as to what is to be defended. When we say the entirety and never, those words at least from a temporal standpoint make abundantly clear that we're talking about the entirety of his employment, which would in fact cover that time period while MetLife was still a member form and therefore would have the immaterial events having occurred during that time frame. Unless the court . . . oh, the only other issue I would note is there was a question from Your Honor about expiration. We cited in our brief, page 10 and 11 of our initial brief, issues as to expiration or termination of arbitration agreements are actually decided by the arbitrators, and those are two Second Circuit cases that we cited in our brief covering that precise issue. The last thing is the Granite Rock case, because you had asked a question about formation. The Granite Rock case, the issue there was that there was no agreement ever formed. That was the holding. Here, we have an admission that there was an agreement that was formed. Unless the court has any other questions, I thank you. . . . . . . It seems to me that viewed in a certain light, perhaps an improbable one or an unrealistic one, this gives you a scenario that gives you in a way the best of both worlds, because all that's happened so far is that the district judge has granted a preliminary injunction, which doesn't finally adjudicate your right to arbitrate. If you pursue litigation in the district court, you get the kind of discovery that you get under the federal rules in order to substantiate your claim that you're entitled to arbitration, so you get the discovery that you might not have gotten from arbitrators. If that discovery gives you the wherewithal to make a plausible claim of under compensation in 2002 to 2007, you then can go back to the district court and say, see here we now have substantiation for an arbitration claim for the period when Metlife was a member, and we have an arbitration agreement that covers that, so you then can go back. . . . . . . . . . . . . . . . . . . . . .